## IN RE LUIS OTEIZA y CORTES, Petitioner.[1]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 1631. Argued May 20, 1890. — Decided May 23, 1890.

A writ of *habeas corpus* in a case of extradition cannot perform the office of a writ of error.

If the commissioner has jurisdiction of the subject matter and of the person of the accused, and the offence charged is within the terms of a treaty of extradition, and the commissioner, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision of the commissioner cannot be reviewed by a Circuit Court or by this court, on *habeas corpus*, either originally or by appeal.

In § 5 of the act of August 3, 1882, c. 378, (22 Stat. 216,) the words "for similar purposes" mean "as evidence of criminality," and depositions, or other papers, or copies thereof, authenticated and certified in the manner prescribed in § 5, are not admissible in evidence, on the hearing before the commissioner, on the part of the accused.

PETITION for a writ of *habeas corpus*. The writ was denied, from which judgment the petitioner took this appeal. The case is stated in the opinion.

*Mr. Louis S. Phillips* for the petitioner.

*Mr. Emmet R. Olcott,* on behalf of the Spanish government, opposing.

---

[1] The docket title of this case was: — *Luis de Oteiza y Cortez, Appellant,* v. *John W. Jacobus, Marshal, etc., et al.*

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

By section 12, of Article II, of the convention between the United States and the kingdom of Spain, for the extradition of criminals, concluded January 5, 1877, and proclaimed February 21, 1877, (19 Stat. 650,) it was provided, that persons should be delivered up according to the provisions of the convention, who should have been charged with, or convicted of, any of the following crimes: " 12. The embezzlement of public funds, committed within the jurisdiction of one or the other party, by public officers or depositaries."

By a supplemental convention between the United States and the kingdom of Spain, concerning extradition, concluded August 7, 1882, and proclaimed April 19, 1883, (22 Stat. 991,) section 12, of Article II, of the convention of January 5, 1877, was amended to read as follows: " 12. The embezzlement or criminal malversation of public funds, committed within the jurisdiction of one or the other party, by public officers or depositaries."

On the 2d of January, 1890, Miguel Suarez Guanes, the Consul General of Spain at the city of New York, duly recognized as such by the President of the United States, filed a complaint, on his own oath, before Samuel H. Lyman, a duly authorized United States commissioner for the Southern District of New York, charging that one Luis Oteiza y Cortes, the secretary or clerk of the Bureau of Public Debt of the island of Cuba, at Havana, and an officer in the employment of the kingdom of Spain, at Havana, had charge of the public funds and moneys belonging to the kingdom of Spain, namely, the Bureau of Public Debt of the island of Cuba, at Havana; that in December, 1889, the said Luis Oteiza y Cortes (who will hereinafter be called Oteiza) at Havana, and within the jurisdiction of the kingdom of Spain, in the course of his said employment, had in his possession, as such clerk or secretary, a large amount of public bonds or certificates of indebtedness of the kingdom of Spain, belonging to the public debt of the island of Cuba, and being a part of the public funds of the kingdom of Spain; and that Oteiza, at that time, at Havana,

wrongfully and feloniously embezzled bonds or certificates of indebtedness belonging to the said public debt of the island of Cuba, of the value of $190,000, and converted the same to his own use, and also the coupons of other government bonds, of the value of $500,000, and the stub-books thereof. The complainant, therefore, charged Oteiza with the crime of embezzlement of bonds or certificates of indebtedness of the said public debt of the island of Cuba, committed at Havana, and further stated that Oteiza had fled to the United States, and that criminal proceedings had been begun in Havana against him for such embezzlement, and asked for a warrant for his apprehension under the above-named two conventions, that evidence of his criminality might be heard by the commissioner, and that if, on the hearing, the evidence should be deemed sufficient to sustain the charge, a warrant might issue for his surrender. In the course of the proceedings before the commissioner, this complaint was amended by adding the words "or criminal malversation" after the word "embezzlement," wherever it appeared in the complaint.

On the 2d of January, 1890, a warrant was issued by the commissioner, reciting the complaint and stating that Oteiza was charged by it "with having committed the crime of embezzlement or criminal malversation of public funds within the jurisdiction of the kingdom of Spain,"·and that such crime was enumerated and provided for by the two conventions before mentioned. The warrant was directed to the marshal or any deputy, and commanded that Oteiza be apprehended and brought before the commissioner, in order that the evidence of his criminality might be heard. Oteiza was arrested, and evidence in ·the matter on both sides was heard ·by the commissioner. On the 13th of March, 1890, the commissioner certified that, on the examination and the hearings which had been had, he deemed the evidence sufficient to sustain the charge, and that he committed the accused.to the custody of the marshal, to be held until a warrant for his surrender should issue according to the stipulations of the treaty, or he should be otherwise dealt with according to law.

On the 14th of March, 1890, a writ of *habeas corpus*, to

bring the body of Oteiza before the Circuit Court of the United States for the Southern District of New York, directed to John W. Jacobus, the marshal of the United States for the Southern District of New York, and to the warden of the jail, and a writ of *certiorari* to the commissioner, to transmit the proceedings to the said Circuit Court, were allowed by Judge Lacombe. These writs were returnable on the 28th of March, 1890. The case was heard by Judge Lacombe in the Circuit Court, and on the 18th of April, 1890, that court made an order discharging the writ of *habeas corpus*. Oteiza has appealed to this court.

In his opinion in the matter, which forms part of the record, Judge Lacombe arrives at the conclusion, that either the coupons alleged to have been abstracted by Oteiza were public funds, or that, by discharging the functions of his office falsely and with corrupt intent, he had got possession of certain moneys which were public funds, paid out by the Spanish Bank of the island of Cuba, which would not have passed from the possession of that bank to his own possession, except as a consequence of his official action; that he, therefore, obtained charge of such moneys by virtue of his office, and thereupon converted them to his own use; that his acts were, therefore, within the terms of article 401 of the Spanish penal code of Cuba, which is a part of Title VII, "Of the crimes of public employés in the discharge of their duties," and of chapter 10 therein, entitled "Malversation of public funds," and reads as follows: "Art. 401. A public officer, who, having charge of public effects or funds by virtue of his office, takes or allows others to take the same, shall be punished as follows," etc.; and that like acts are made punishable by section 5438 of the Revised Statutes of the United States, and by section 165 of the Penal Code of New York. The judge also refers to the warrant of arrest issued against Oteiza in Cuba, as specifically stating the offence which it was claimed he had committed. From that warrant it appears that the complaint against Oteiza in Cuba was for having committed the crime of "embezzlement of public funds" as a public officer.

We are of opinion that the order of the Circuit Court, refus-

ing to discharge Oteiza, must be affirmed. A writ of *habeas corpus* in a case of extradition cannot perform the office of a writ of error. If the commissioner has jurisdiction of the subject matter and of the person of the accused, and the offence charged is within the terms of a treaty of extradition, and the commissioner, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused, for the purposes of extradition, such decision of the commissioner cannot be reviewed by a Circuit Court or by this court, on *habeas corpus*, either originally or by appeal.

In the case of *Benson* v. *McMahon*, 127 U. S. 457, 461, 462, 463, which was an appeal to this court from an order of a Circuit Court of the United States, denying a discharge to a prisoner, on a writ of *habeas corpus* issued by that court to a United States marshal, in a case of extradition, where a United States commissioner had held the accused by a final commitment, this court, speaking by Mr. Justice Miller, said : "Several questions in regard to the introduction of evidence, which were raised before the commissioner, some of them concerning the sufficiency of the authentication of papers and depositions taken in Mexico, and as to the testimony of persons supposed to be expert in the law of that country regarding the subject, are found in the record, which we do not think require notice here. The writ of *habeas corpus*, directed to the marshal of the Southern District of New York, does not operate as a writ of error. . . . The main question to be considered upon such a writ of *habeas corpus* must be — had the commissioner jurisdiction to hear and decide upon the complaint made by the Mexican consul; and also, was there sufficient legal ground for his action in committing the prisoner to await the requisition of the Mexican authorities? . . . We are of opinion that the proceeding before the commissioner is not to be regarded as in the nature of a final trial, by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations, which take place every day

in this country, before an examining or committing magistrate, for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment or other proceeding in which he shall be finally tried upon the charge made against him. The language of the treaty which we have cited, above quoted, explicitly provides that 'the commission of the crime shall be so established as .that the laws of the country in which the fugitive or the person so accused shall be found would justify his or her apprehension and commitment for trial, if. the crime had been there committed.' This describes the proceedings in these preliminary examinations as accurately as language can well do it. . The act of Congress conferring jurisdiction upon the commissioner, or other examining officer, it may be noted in this connection, says, that if he deems the evidence sufficient to sustain the charge under the provisions of the treaty, he shall certify the same, together with a copy of all the testimony, and issue his warrant for the commitment of the person so charged." In the present case, article 1 of the convention of January 5, 1877, provides that the surrender of the accused "shall take place only upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had been there committed." In the opinion in *Benson* v. *McMahon, supra,* the court proceeds: "We are not sitting in this court on the trial of the prisoner, with power to pronounce him guilty and punish him, or declare him innocent and acquit him. We are now engaged simply in an inquiry as to whether, under the construction of the act of Congress and the treaty entered into between this country and Mexico, there was legal evidence before the commissioner to justify him in exercising his power to commit the person accused to custody, to await the requisition of the Mexican government."

Without discussing the questions raised in the present case, it is sufficient to say that we concur in the views of Judge Lacombe.

The only point raised on behalf of Oteiza which we deem it important to notice is his offer to introduce in evidence before the commissioner, on his own part, certificates, made by public officers in Cuba, as to the existence of certain facts, and also certain copies of papers, and certain *ex parte* depositions in writing taken in Cuba before a notary public; all of which were sought to be made evidence under certificates made by the consul general of the United States at Havana, certifying that the papers were properly and legally authenticated so as to entitle them to be received "in the tribunals of Cuba as evidence in defence of a charge of embezzlement, and as evidence in defence of said charge upon a preliminary hearing before a committing magistrate, and as evidence in defence of said charge in an extradition proceeding upon a hearing before a competent magistrate, and especially as evidence in all the cases enumerated, where said charge of embezzlement is made against Don Luis de Oteiza y Cortes."

It is supposed that these documents were admissible in evidence by virtue of the provisions of section 5 of the act of August 3, 1882, c. 378, 22 Stat. 216, which reads as follows: "Sec. 5. That in all cases where any depositions, warrants or other papers, or copies thereof, shall be offered in evidence upon the hearing of any extradition case under title sixty-six of the Revised Statutes of the United States, such depositions, warrants and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing for all the purposes of such hearing, if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country, shall be proof that any deposition, warrant or other paper, or copies thereof, so offered are authenticated in the manner required by this act."

We are of opinion that section 5 of the act of August 3, 1882, applies only to papers or copies thereof, which are offered in evidence by the prosecution to establish the criminality of the person apprehended; and that it does not apply to doc-

uments or depositions offered on the part of the accused, any more than did the provisions of section 5271 of the Revised Statutes, either as originally enacted or as amended by the act of June 19, 1876, c. 133, 19 Stat. 59.

This view was held by Judge Brown, in the District Court for the Southern District of New York, in March, 1883, in *In re Wadge*, 15 Fed. Rep. 864. In that case, the commissioner had refused to adjourn the proceedings before him in order to enable the accused to procure depositions from England, to establish an *alibi*. Judge Brown considered the act of August 3, 1882, and held that while it was the duty of the commissioner, under section 3 of that act, to take such evidence of oral witnesses as should be offered by the accused, the statute did not apply to testimony obtained upon commission or by deposition, adding that, so far as he was aware, there was no warrant, according to the law or the practice before committing magistrates in the State of New York, for receiving testimony by commission or by the depositions of foreign witnesses taken abroad, and that all the provisions of the law and the statutes contemplated the production of the defendant's witnesses in person before the magistrate for examination by him. The order dismissing the writ of *habeas corpus* in that case was affirmed by the Circuit Court, held by Judge Wallace, in *In re Wadge*, 21 Blatchford, 300. He said: "The depositions and proofs presented a sufficient case to the commissioner for the exercise of his judicial discretion, and his judgment cannot be reviewed upon this proceeding. He is made the judge of the weight and effect of the evidence, and this court cannot review his action, when there was sufficient competent evidence before him to authorize him to decide the merits of the case."

In the case of *In re McPhun*, 24 Blatchford, 254, in the Circuit Court for the Southern District of New York, before Judge Brown, in March, 1887, on a *habeas corpus* in an extradition case, it was held that the words "for similar purposes" in the 5th section of the act of August 3, 1882, must receive the same construction they had received under the act of June 22, 1860, c. 184, 12 Stat. 84, which was that

they meant "as evidence of criminality;" and that the same construction had been given to similar words in prior statutes; citing *In re Henrich*, 5 Blatchford, 414, 424, and *In re Farez*, 7 Blatchford, 345, 353. We concur in this view.

Since the close of the oral argument we have been furnished with a printed brief on the part of the appellant, which we have examined, but we do not deem it necessary to make any further observations on the case.

The order of the Circuit Court is

　　　　　　　　　　　　　　　　　　　　　　　　　*Affirmed.*