In re TOM YUM.

(District Court, N. D. California. November 15, 1894.)

No. 11,109.

ADMISSION OF ALIENS TO UNITED STATES—JURISDICTION OF IMMIGRATION OFFICERS—HABEAS CORPUS.

The provision in the sundry civil appropriation act of August 18, 1894, making the decision of an immigration or customs officer excluding an alien from admission to the United States final, unless reversed on appeal to the secretary of the treasury, does not give that officer final jurisdiction to determine that a person of Chinese descent is not a citizen of the United States, where he claims the right to admission on the ground that he is a citizen; and the question of his citizenship may be determined by the courts on writ of habeas corpus.

This was a motion to quash a writ of habeas corpus.

Chas. A. Garter, U. S. Atty., for the motion.
Lyman I. Mowry, opposed.

MORROW, District Judge. This matter comes before me on a motion to quash the writ of habeas corpus issued by this court on

October 11, 1894. The writ was sued out upon the petition of one Tom Sing, on behalf of Tom Yum, a Chinese passenger on the steamer Gaelic, from Hong Kong. It is averred in the petition for the writ that Tom Yum is unlawfully imprisoned, detained, confined, and restrained of his liberty by Capt. Pearne, master of the steamship Gaelic; that it is claimed by said master that said passenger is a subject of the emperor of China, and must not and cannot be allowed to land, under the provisions of the act of congress of May 6, 1882, entitled "An act to execute certain treaty stipulations relating to Chinese," and the acts amendatory thereof and supplemental thereto; that said passenger does not come within the restrictions of said acts, but, on the contrary, the petitioner alleges that said passenger was a resident of the United States, and departed therefrom, on the steamship Oceanic, on the 17th day of June, 1879; that said passenger is a citizen of the United States, and was born at No. 722 Dupont street, in the city and county of San Francisco, state of California; that he applied to the collector of the port for a landing, but said application was denied; wherefore, the petitioner prays that a writ of habeas corpus may issue in behalf of said Tom Yum, to test the legality of the latter's detention. The writ having issued, the district attorney intervened on behalf of the United States, opposing the discharge of Tom Yum, and filed subsequently the motion to quash the writ, which is the motion now under consideration.

The legal propositions raised by this motion involve the interpretation of a provision contained in the act entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30th, 1895, and for other purposes," approved August 18, 1894 (28 Stat. p. 390). The provision reads as follows:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the secretary of the treasury."

The constitutionality of the provision, so far as it empowers the collector of the port, as the appropriate customs officer, to pass upon the right of an alien to come into this country, is not denied, nor, indeed, is the question open to any doubt. A similar provision is to be found in section 8 of the act of March 3, 1891 (26 Stat. 1085), which excludes from admission into the United States certain classes of aliens, and invests the inspection officers and their assistants with exclusive power to pass upon the right of aliens to enter this country, subject to an appeal to the superintendent of immigration, whose decision is final, unless reviewed by the secretary of the treasury. The validity of this provision was considered by the supreme court in the case of Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336. Mr. Justice Gray, in delivering the opinion of the court in that case, said:

"The supervision of the admission of aliens into the United States may be intrusted by congress either to the department of state, having the general

management of foreign relations, or to the department of the treasury, charged with the enforcement of the laws regulating foreign commerce; and congress has often passed acts forbidding the immigration of particular classes of foreigners, and has committed the execution of these acts to the secretary of the treasury, to collectors of customs, and to inspectors acting under their authority. See, for instance, Act March 3, 1875, c. 141 (18 Stat. 477); Act Aug. 3, 1882, c. 376 (22 Stat. 214); Act Feb. 23, 1887, c. 220 (24 Stat. 414); Act Oct. 19, 1888, c. 1210 (25 Stat. 566),—as well as the various acts for the exclusion of the Chinese. An alien immigrant, prevented from landing by any such officer claiming authority to do so under an act of congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful. Chew Heong v. U. S., 112 U. S. 536, 5 Sup. Ct. 255; U. S. v. Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663; Wan Shing v. U. S., 140 U. S. 424, 11 Sup. Ct. 729; Lau Ow Bew, Petitioner, 141 U. S. 583, 12 Sup. Ct. 43. And congress may, if it sees fit, as in the statutes in question in U. S. v. Jung Ah Lung, just cited, authorize the courts to investigate and ascertain the facts on which the right to land depends. But, on the other hand, the final determination of those facts may be intrusted by congress to executive officers; and in such a case, as in all others in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine, or controvert the sufficiency of, the evidence on which he acted. Martin v. Mott, 12 Wheat. 19, 31; Railroad Co. v. Stimpson, 14 Pet. 448, 458; Benson v McMahon, 127 U. S. 457, 8 Sup. Ct. 1240; In re Luis Oteiza y Cortes, 136 U. S. 330, 10 Sup. Ct. 1031. It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by congress, are due process of law. Murray v. Improvement Co., 18 How. 272; Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548."

In accordance with this doctrine, it is contended by the district attorney that the writ of habeas corpus cannot be resorted to in this case, for the reason that the collector of the port, by virtue of his authority to pass upon the right of an alien to enter this country, is vested with the authority of passing upon the question of nativity and citizenship of a person of Chinese descent, and, that being so, that the only method of review provided for is by an appeal to the secretary of the treasury; in other words, it is claimed that the writ of habeas corpus cannot be availed of to review the decision of the collector in this matter, because the latter is invested with the authority of determining whether a Chinese person seeking admission into the United States is an alien, or a citizen of this country. It is well settled that the writ of habeas corpus cannot be used to review, as upon a writ of error, the decision of a judicial or quasi-judicial tribunal or officer lawfully constituted by law, and acting within the proper confines of his jurisdiction; and, on the other hand, it is equally certain that the writ may be resorted to—in fact, that is one of its great functions—to inquire into the jurisdiction exercised by such tribunal or officer, for the purpose of ascertaining whether such power has been kept within its legal limits, and the proceedings therein have been according to law. The scope of the writ of habeas corpus, in proceedings similar to these, was succinctly and clearly

stated by Mr. Justice Blatchford in Re Luis Oteiza y Cortes, 136 U.
S. 330, 10 Sup Ct. 1031, where the supreme court had under consideration the authority of a commissioner in an extradition case. It
was sought to have the supreme court of the United States review
the decision of the commissioner. The learned justice said:

"A writ of habeas corpus, in a case of extradition, cannot perform the
office of a writ of error. If the commissioner has jurisdiction of the subject-
matter and of the person of the accused, and the offense charged is within
the terms of a treaty of extradition, and the commissioner, in arriving at
a decision to hold the accused, has before him competent legal evidence on
which to exercise his judgment as to whether the facts are sufficient to es-
tablish the criminality of the accused, for the purpose of extradition, such
decision of the commissioner cannot be reviewed by a circuit court or by
this court on habeas corpus, either originally or by appeal."

The following authorities are all to the same effect: In re Day,
27 Fed. 678, 681; In re Cummings, 32 Fed. 75; In re Dietze, 40 Fed. 324;
In re Vito Rullo, 43 Fed. 62; Benson v. McMahon, 127 U. S. 457, 8
Sup. Ct. 1240; and the case of Nishimura Ekiu v. U. S., supra.

But it will be observed that the provision of the statute in question
refers only to cases where aliens are excluded from admission into
the United States under any law or treaty, and it is with respect to
them that the decision of the appropriate immigration or customs of-
ficer, if adverse to their admission, is final, unless reversed on appeal
to the secretary of the treasury. If, for instance, the Chinese person
is an alien, but applies for entrance into the United States on the
ground that he was formerly engaged in this country as a merchant,
the determination of this question will rest exclusively with the ap-
propriate immigration or customs officer, and his decision will be
final, unless reversed on appeal by the secretary of the treasury. So
with respect to aliens, concerning whom questions arise as to
whether they have been excluded from admission into the United
States under any of the acts relating to immigration; the decision of
the immigration or customs officer, in such cases, is made final, sub-
ject only to an appeal to the secretary of the treasury. But does
it follow that these officers have the exclusive authority of determin-
ing the preliminary question whether a person coming into the
United States is a citizen or an alien? Had the provision under con-
sideration been as broad in its terms as that contained in the act of
September 18, 1888, entitled "An act to prohibit the coming of
Chinese laborers to the United States," the contention of the district
attorney would have great force. It was there provided, in section
12 (25 Stat. 478):

"That before any Chinese passengers are landed from any such vessel,
the collector, or his deputy, shall proceed to examine such passengers, com-
paring the certificates with the list and with the passengers; and no pas-
senger shall be allowed to land in the United States from such vessel in vio-
lation of law; and the collector shall in person decide all questions in
dispute with regard to the right of any Chinese passenger to enter the United
States, and his decision shall be subject to review by the secretary of the
treasury, and not otherwise."

This act never went into effect, for the reason that the Chinese
government refused to ratify the then pending treaty with the United

States, upon which the force of the act as law depended; but it serves to show that congress had in that act the purpose of conferring upon the collector the authority of deciding all questions in dispute with regard to the right of any Chinese passenger to enter the United States, and this purpose has not been so clearly or definitely expressed in the act under consideration. That the present provision, from the language used, relates to "aliens" only, and has nothing whatever to do with "citizens," is beyond question. But, as before stated, this must not be construed to imply that the collector is divested of all authority over Chinese passengers. On the contrary, he has, under this law, undoubted jurisdiction over aliens; his authority to pass upon their right to enter this country is clear and unmistakable, and his decisions, as to them, conclusive upon the courts. This jurisdiction includes the exclusive right to determine whether a Chinese passenger is a laborer or a merchant, according to the requirements of section 2 of the act of November 3, 1893 (28 Stat. 7), and to pass upon the qualifications of Chinese persons claiming to be diplomatic officers, etc. In short, his authority to examine and determine the qualifications of aliens of the Chinese race to enter the United States is complete, and, subject to an appeal to the secretary of the treasury, is conclusive; and the courts are in duty bound to give full effect to the jurisdiction conferred upon the collector, and his decisions, so far as they concern aliens, will not be disturbed or interfered with. The question is, however, one of an entirely different complexion with regard to citizens, or Chinese passengers claiming to be citizens, of the United States. The latter are not included, either expressly or by implication, in the present act. As to them, the collector is without authority to finally and conclusively pass upon their right to come into this country. Precisely the same question arose in Re Panzara, 51 Fed. 275. In that matter, an application was made by Angelo Panzara and others for a writ of habeas corpus, it being alleged that they were illegally detained by the master of the ship Cheribon. The master produced the petitioners in accordance with the writ, and made return that:

"The above-named persons had been placed in his custody as master of said steamship, and on board thereof, by the direction of the superintendent of immigration of the port of New York, to be sent back to Italy."

To this return the petitioners made answer that they were not alien immigrants, but were residents of the United States, where they had acquired a domicile, and that when returning to their respective homes in the United States, from a voyage to Italy, undertaken by them with the intention of coming back to the United States, they were unlawfully detained, and directed to be sent back to Italy, by the superintendent of immigration. The questions raised involved the interpretation of the term "alien immigrants," and the extent of the jurisdiction of the superintendent of immigration under the act of March 3, 1891, prohibiting the entering of certain classes of aliens, viz. idiots, insane persons, paupers, or persons likely to become a public charge; persons suffering from a loathsome or

a dangerous contagious disease; persons who have been convicted of a felony or other infamous crime, or misdemeanor involving moral turpitude, etc. Judge Benedict, in passing upon the question of the jurisdiction of the superintendent of immigration under the provisions of that act, decided that the power of the federal superintendent of immigration to return passengers who were aliens was confined to "alien immigrants" alone, and did not extend to residents of the United States, who had acquired a domicile therein, and had departed from this country with the intention of returning; nor, the learned judge held, did the jurisdiction of passing upon the right of "alien immigrants" to enter this country include the further power of finally passing upon the question whether a passenger was an "alien immigrant" or a "resident," subject only to an appeal to the secretary of the treasury, as provided by that act. In referring to the jurisdictional character of that question, the judge said:

"The statute conferring power upon the superintendent of immigration to order the return of persons arriving in the United States from foreign countries confines his power to alien immigrants. He has no jurisdiction to direct the return to a foreign country of a person not an alien immigrant. The question whether the petitioner is an alien immigrant is therefore a jurisdictional one, and the finding of the commissioner upon that question is not conclusive upon the courts. That question, when presented to the court by a petition for habeas corpus, must be decided by the court upon the evidence presented to the court in such proceeding."

This statement of the law is peculiarly applicable to the present case, and further citation of authority would seem to be unnecessary. I am of the opinion, therefore, that the collector of the port does not possess the power of finally and conclusively passing upon the jurisdictional question whether a Chinese person is an alien or a citizen, subject only to an appeal to the secretary of the treasury. The determination of the question in the matter now before the court, viz. whether Tom Yum is a citizen, as he claims to be, or is an alien, is the very fact upon which the jurisdiction of the collector depends. If he is an alien, then the collector has undoubted and complete jurisdiction, but, if he is a citizen, the authority vested in him by the provision, in unmistakable terms, does not empower him to finally pass upon the latter's right to come into this country. It is difficult to see, therefore, how his decision upon a fact on which his very jurisdiction rests can be deemed conclusive upon this court. The authority claimed for the collector is certainly not expressly conferred on him by the terms of the provision in question, nor do I think that the language therein used can be susceptible of such an interpretation of his jurisdiction. The motion to quash will therefore be denied.