Judgment may be entered for the plaintiff upon the verdict.

---

## In re REINER.

(District Court, S. D. New York. April 16, 1903.)

1. EXTRADITION—EMBEZZLEMENT—"PUBLIC MONEYS."

The embezzlement of the funds of a savings bank, established, maintained, and owned by a city in Germany, by a cashier who is a public official appointed by the city, is an embezzlement of public moneys within the meaning of the treaty of 1852 between Prussia and the other states of the Germanic Confederation and the United States.

(Syllabus by the Court.)

William Lesser, for petitioner.
Rudolph Dulon, for complainant.

HOLT, District Judge. This matter comes before this court on writs of habeas corpus and certiorari, granted upon the petition of Alexander Edmund Reiner, to review the action of a United States commissioner holding the petitioner for extradition to Germany on a charge of the crime of the embezzlement of public moneys, preferred by the consul general of Germany at New York.

It is well settled that a writ of habeas corpus in an extradition proceeding cannot perform the office of a writ of error. If the commissioner had jurisdiction, and the offense charged was within the terms of the treaty, and the commissioner had before him competent legal evidence on which to exercise his judgment whether the facts established the criminality of the accused, the commissioner's decision cannot be reviewed on habeas corpus. Oteiza v. Jacobus, 136 U. S. 334, 10 Sup. Ct. 1031, 34 L. Ed. 464; Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689, 40 L. Ed. 787.

The only question raised upon the hearing which seems to me to require any consideration is the question whether there is legal evidence that the moneys which the accused embezzled were public moneys. The extradition is demanded under the provisions of the treaty of 1852 between the United States and Prussia and the other states of the Germanic Confederation, including the kingdom of Saxony, 10 Stat., "Treaties," 964. This treaty provides for the extradition of persons charged, among other crimes, with "the embezzlement of public moneys." It makes no provision for the extradition of persons charged with the embezzlement of private funds, and the use of the term "public moneys" in the treaty obviously excludes the right to demand extradition for the embezzlement of private funds. The evidence shows that the accused was clearly guilty of the embezzlement of the funds of a savings bank in the city of Lauenstein, Saxony. The proprietor of this savings bank was the city of Lauenstein. The accused was duly appointed to the office of the city and savings bank cashier of Lauenstein. He took his oath of office and duly received his certificate of office as such. Besides the management of other moneys of the city, he was charged with the management of the banking business of such savings bank. The money which he embezzled was embezzled from the funds of the savings bank. He concealed such embezzlements for a certain time by charging the amounts withdrawn to closed accounts of depositors, as though the accounts were still open. Upon the discovery of some of the embezzlements, he admitted the embezzlement of a certain amount, and he caused his wife to give a mortgage of 6,000 marks on real estate belonging to her as indemnification to the city community of Lauenstein for the amount embezzled. It was subsequently discovered, upon a further examination of the books, that he had embezzled a larger amount than he had admitted. After this discovery he left Germany and came to this country, and thereupon proceedings for his extradition took place.

I think, upon this evidence, that the commissioner was justified in finding that the sums embezzled were public moneys. The money deposited in the savings bank by individual depositors was, of course, before the deposit, private moneys, but upon the deposit the money became the money of the city of Lauenstein, the owner of the bank. Undoubtedly the city was responsible for the amount of such deposits to the respective depositors, but the deposit simply created a debt from the city to the depositor. The counsel for the accused asserts that the term "public moneys" as used in this treaty means money collected by taxation or in some similar manner, applicable by the government

to any general public purpose, and that there is no evidence that the money in the savings bank could have been used for any purpose except to repay the amount due to individual depositors. But I think that the money, while held by the city in the bank, was public money belonging to the municipality. The case is analogous to money deposited in a postal savings bank in England, or to money deposited in the post office in this country, for which a postal money order is obtained for the purpose of transmitting the money to another part of the country. The money which is deposited in the post office is only accepted by the government for the purpose of enabling it to pay the postal money order when presented, and, in a certain sense, is not held, like the proceeds of taxation, for general public purposes; but, in my opinion, if any postal employé should embezzle such moneys after their deposit in the post office, he would be guilty of the embezzlement of public moneys within the meaning of that term as used in treaties.

My conclusion is that the commissioner's order should be affirmed, the writs dismissed, and the prisoner held to await the order of the Secretary of State in the proceeding.