## In re LINCOLN.

(District Court, E. D. New York. November 19, 1915.)

1. EXTRADITION ⊜⟿17—PROCEEDINGS—REVIEW—CERTIORARI AND HABEAS CORPUS.

The writ of certiorari furnishes the court no wider range of determination, on the sufficiency of the facts shown to warrant a holding for extradition, than does the writ of habeas corpus.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 20; Dec. Dig. ⊜⟿17.]

2. HABEAS CORPUS ⊜⟿92—EXTRADITION PROCEEDINGS—REVIEW—EVIDENCE.

Questions as to the weight and credibility of competent evidence on an examination for extradition will not be considered on habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. ⊜⟿92.]

3. EXTRADITION ⊜⟿14—INTERNATIONAL—EVIDENCE OF CRIMINALITY—"SIMILAR PURPOSES."

As regards the criminality of one for whom extradition is demanded by Great Britain, it is enough that under Act Aug. 3, 1882, c. 378, § 5, 22 Stat. 216 (Comp. St. 1913, § 10116), it offers documents, authenticated as certified by the American ambassador, so as to entitle them to be received "for similar purposes"—that is, as evidence of his criminality—in the tribunals of that country, and that under Treaty of Aug. 9, 1842, art. 10 (8 Stat. 576) amended by Treaty of July 12, 1889 (26 Stat. 1508), there

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be competent evidence to make a prima facie case of the crime as known in this country.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 15, 16; Dec. Dig. ☞14.

For other definitions, see Words and Phrases, First Series, Similar Purposes.]

4. CONSTITUTIONAL LAW ☞73—JUDICIAL POWERS—EXTRADITION—QUESTION FOR SECRETARY OF STATE.

Whether a demanding country may be trusted to live up to its treaty obligation, that one whose extradition is demanded shall not be tried or punished for a political offense, is a question for the Secretary of State.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 134–137; Dec. Dig. ☞73.]

In the matter of the application for extradition of Ignatius T. T. Lincoln. Hearing on writs of habeas corpus and certiorari after holding for extradition.

Pratt, Koehler & Boyle, of New York City (Addison S. Pratt and Morris Cukor, both of New York City, of counsel), for petitioner.

Charles Fox, of New York City, for demanding government.

CHATFIELD, District Judge. The petitioner has been held by a judge of this court, sitting as commissioner, to await the action of the Department of State, upon an application to extradite him to the county of London, England, in the kingdom of Great Britain and Ireland, upon charges of forgery and obtaining money on false pretenses through the utterance of paper known to him to be forged. He has been brought before this court upon a writ of habeas corpus and also a writ of certiorari, and return has been made to both writs by the production of the petitioner in court, and by presentation of the various papers and warrants constituting the record of the hearing up to and including the order of the judge as commissioner.

Upon this return, the petitioner has asked for his discharge, alleging certain defects which he claims appear upon the face of the record, but traversing none of the facts, and the matter has been therefore submitted upon the record without additional testimony. The grounds urged by the petitioner will be referred to in order.

The petitioner claims that the record does not contain sufficient proof of the charges of forgery, the uttering of forged papers, or the obtaining of moneys thereby, to make possible the finding that a crime has apparently been committed.

[1] No distinction has been made in arguing the writs between the writ of habeas corpus and the writ of certiorari, and it is not considered that the writ of certiorari furnishes to the court any wider range of determination, upon the sufficiency of the facts shown, than does the writ of habeas corpus in this sort of a proceeding.

[2] It has been decided in In re Luis Oteiza v. Cortes, 136 U. S. 330, 10 Sup. Ct. 1031, 34 L. Ed. 464, and In re Krojanker et al. (C. C.) 44 Fed. 482, that upon a writ of habeas corpus questions as to the weight and effect of competent evidence will not be considered. In Grin v. Shine, 187 U. S. 191, 23 Sup. Ct. 98, 47 L. Ed. 130, the Supreme Court of the United States looked into the entire record, in

order to see if there was competent evidence to support each proposition found by the commissioner, and whether these propositions comprised the necessary essentials of the crimes charged. But although thus going into the evidence, the court held merely that each conclusion was based upon some evidence, and that the weight and credibility thereof could not be collaterally attacked under a writ of habeas corpus.

In the present case the court has examined the record, and it appears that the conclusions of the commissioner, in all the essential elements of his finding, were based upon some evidence which was competent for the purpose, and which he had the right to treat as credible, in his discretion. His finding, therefore, that there is reasonable cause to hold that the crimes charged were apparently committed in the county of London, England, is conclusive upon that point in this proceeding.

Nothing has been urged to show that these crimes are not to be considered as comprising the same essential elements which are denoted by the words "forgery," etc., in the sense in which they are used in this country and in this district; and there is therefore no error of law which is apparent upon the face of the record in the conclusions from the facts presented.

The petitioner questions the sufficiency of the evidence as to identity. Again, this is a question of fact, and should be clearly and definitely determined. Similarity of name, handwriting, and photograph, coupled with direct identification thereof, and with uncontradicted statements as to the whereabouts of the accused and his history, which in general coincide with what is known of the defendant petitioner, furnish sufficiently strict proof, if found credible by the commissioner. The record fails, furthermore, to show any actual contradiction or plea that the defendant is not the person wanted.

[3] The petitioner objects to the sufficiency of the documents produced and offered in evidence from the courts in London, as authenticated by the Under Secretary of State for the Home Department and by the American ambassador, and this point was passed upon by the commissioner upon objection at the hearing.

The case of In re Behrendt (C. C.) 22 Fed. 699, decided in this circuit in 1884, and In re Luis Oteiza v. Cortes, supra, recite the statutes and pass upon the sufficiency of a certificate by the principal diplomatic officer of the United States to make the documents admissible in this country as evidence upon the question of probable cause as to the commission of a crime in the country to which extradition is asked.

In the present case, as in the cases cited, the words "similar purposes," when limited to an attempt to prove a charge of forgery or uttering of forged instruments, refer to the crimes so denominated in the Treaty of July 12, 1889 (26 Stat. 1508), amending article 10 of the Treaty of August 9, 1842 (8 Stat. 576), and not to an extradition hearing in the country making the demand.

Section 5 of the laws of August 3, 1882 (22 Stat. 215, c. 378) which provides for the certificate referred to, is evidently based upon section 5271, R. S. (Comp. St. 1913, § 10111). Section 5271, which is repealed by section 6 of this law, uses the words "similar purposes" with direct

reference to "evidence of criminality of the person so apprehended," and the meaning of the later statute is plainly the same.

Section 5270, R. S. (Comp. St. 1913, § 10110), provides that the person charged shall be committed to jail, if held, "there to remain until such surrender shall be made." Under section 5273, R. S. (Comp. St. 1913, § 10119), he may be released, however, upon application to a judge, unless delivered up and conveyed out of the United States within two calendar months after such commitment.

The order of the court, under section 5270, is to be made if the evidence is deemed "sufficient to sustain the charges under the provisions of the proper treaty." The charges before the court are the accusations of crime. The action of the Secretary of State is "according to the stipulations of the treaty."

This gives full effect to article 10 of the Treaty of August 9, 1842, providing that only upon sufficient competent evidence to make out a prima facie case of the crime charged in the place where the hearing is held shall the defendant be held for extradition. The certificates attached show the papers certified to be sufficient to make out the crime as known in the foreign jurisdiction, and the conclusions of the magistrate, where the hearing is held, must also be based upon evidence sufficient to make out the crime as known in *that* jurisdiction. The rights of the alleged criminal will thus certainly be protected, even though the definition of the crime itself or the necessary requisites to make up the charge may differ slightly between the two places.

As to this objection, therefore, the question must be disposed of in precisely the same manner as those previously considered, and the conclusions of the judge sitting as commissioner upheld, for the evidence presented, as found by the judge upon the hearing, makes out a prima facie case of the crimes as known in this jurisdiction and also in the county of London, England.

[4] But one other point is raised, and this might be more difficult of determination if it could be considered by this court. At the end of the hearing, the accused asked an adjournment in order to produce evidence to show that he was being extradited for political reasons. It was admitted upon the record by the accused that the treaty with Great Britain made it impossible for Great Britain, while giving full force and effect to the treaty, to try or even to detain or arrest the accused upon any other charge than those for which extradition had been asked. It was also admitted that the treaty was in force, and that the courts of Great Britain must be assumed by the courts of the United States and the Department of State of this country to be exercising the same jurisdiction as at other times, and that the state of war existing between Great Britain and other nations had not interfered with the administration of justice in the civil courts. Nor did the accused suggest that there was likelihood of interference with the civil courts of Great Britain before his case should be disposed of, if extradition should follow. But the accused did offer, as a reason why extradition should not be granted, that the so-called criminal charges had not been urged against him until after certain matters of a political nature, particularly incited by publications of

his in the United States, had led the government of Great Britain to desire his punishment and to seek to interfere with his further public utterances. He therefore asked, leave to prove that, even if extradited upon a criminal charge and tried therefor, the prosecution would be animated by the endeavor to make him endure punishment from political motives, and that no criminal proceedings were desired or had been set in motion, except as a cloak for reaching him upon charges that were not an extraditable offense. He bases this upon the language of article 2 of the Treaty of July 12, 1889, which is as follows:

"A fugitive criminal shall not be surrendered, if the offense in respect of which his surrender is demanded be one of a political character, or if he proves that the requisition for his surrender has in fact been made with a view to try or punish him for an offense of a political character." 26 Stat. 1509.

It does not seem that this question can be disposed of or should be disposed of by the court. The application for extradition is made to the government of the United States through the Department of State. The warrant of extradition must actually be executed by the Department of State, until the prisoner is delivered to the proper officer of the demanding government. The court is concerned solely with the question of the charge of crime, and that crime, as has been said, must be one known as a crime in the place where the hearing was held. If it be shown that the acts charged as crime indicate a *political* offense, and not a *criminal* one, as known to the jurisdiction holding the hearing, then certainly the court could not find that there was probable cause as to the commission of a crime. This would involve considering whether the offense as charged is political or criminal.

But it is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State. The government of the United States, through the Secretary of State, should determine whether the foreign government is in fact able to exercise its civil powers, and whether diplomatic and treaty relations are being carried out and respected in such a way that it is safe to surrender an alleged criminal under a treaty.

It is thought by the court that application to the Secretary of State of the United States will furnish full protection against the delivery of the accused to any government which will not live up to its treaty obligations, and that the Secretary of State will be fully satisfied (before delivering the accused to the demanding government) that he is wanted (in the legal sense of that term) upon a criminal charge, that it is not sought to secure him from a country upon which he is depending as an asylum because of political matters, and that the treaty is not actually used as a subterfuge.

If adjournment is necessary to allow the accused in this case to investigate the propriety of his extradition, that application should be made to the Department of State, and not to the court.