## In re KEENE'S EXTRADITION.

### No. 481.

District Court, S. D. Texas, Laredo Division.

March 10, 1934.

M. J. Raymond, of Laredo, Tex., and M. C. Gonzales, of San Antonio, Tex., for Government of Mexico.

Mann, Neel & Mann, of Laredo, Tex., and H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. U. S. Atty., both of Houston, Tex., for Henry Keene.

KENNERLY, District Judge.

Proceeding under section 651, title 18 USCA,[1] relating to the extradition of fugitives

[1] "Section 651. Fugitives from foreign country. Whenever there is a treaty or convention for extradition between the Government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, or commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within the limits of any State, District, or Territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

from foreign countries and/or under the Treaty of February 22, 1899, between the United States of America and the United States of Mexico (31 Stat. 1818), and particularly articles 9 and 10 thereof,[2] the Honorable John F. Mullally, judge of the Forty-Ninth judicial district of Texas, and of the district court of Webb county, Tex., in such district (same being a court of record of general jurisdiction of Texas), issued his warrant for the arrest, and caused the arrest, of Henry Keene, of Laredo, Tex., who it is claimed is charged with the commission of an offense in Mexico, and extraditable under such treaty.

Before a hearing, such as is required by section 651, was had before Judge Mullally, Keene filed with the clerk of this court his petition for the removal of such proceeding into this court, claiming therein that he is an officer of this court (deputy United States marshal), and that such proceeding was for or on account of an act done under color of his office, and in the performance of his duties as such officer. See section 76, title 28 US CA. Thereupon, the deputy clerk of this court at Laredo issued out of this court, and there was served, a writ of habeas corpus cum causa, and such matter was removed, or attempted to be removed, into this court. Judge Mullally then directed the sheriff of Webb county, who had Keene in custody, to deliver him, and he was delivered, into the custody of the United States marshal of this district. Pending a hearing, Keene has been admitted to bail.

1. The first question presented is whether such proceeding may be removed into this court under section 76, title 28 USCA, and whether this court has jurisdiction.

Section 76 applies to "civil suits" and "criminal prosecutions" "commenced in any court of a State." The proceeding before Judge Mullally was neither under nor by virtue of a state law, nor was it in, nor commenced in, the state court of which he is judge. It was before him under the treaties and laws of the United States, and as a magistrate of the United States.

Section 651 gives any justice of the Supreme Court of the United States the same jurisdiction in extradition matters as is given a state court judge, yet it would hardly be contended that there would be commenced a suit in the United States Supreme Court should a justice thereof see fit to proceed under such section and/or such treaty.

The fact that Judge Mullally called to his assistance the clerk of the state court to keep a record of the proceeding and issue process, and the sheriff of Webb county (an officer of his court) to execute the process and have custody of Keene, does not change the status.

---

[2] Articles 9 and 10 of the Treaty of February 22, 1899, between the United States of America and the United States of Mexico, are as follows:

"Article IX. In the case of crimes or offenses committed or charged to have been committed in the frontier states or territories of the two contracting parties, requisitions may be made either, through their respective diplomatic or consular agents as aforesaid, or through the chief civil authority of the respective state or territory, or through such chief civil or judicial authority of the districts or counties bordering on the frontier as may for this purpose be duly authorized by the said chief civil authority of the said frontier states or territories, or when, from any cause, the civil authority of such state or territory shall be suspended, through the chief military officer in command of such state or territory, and such respective competent authority shall thereupon cause the apprehension of the fugitive, in order that he may be brought before the proper judicial authority for examination; and the record of such examination, with the evidence, duly attested, shall be forwarded to the proper executive authority of the United States of America or of the United Mexican States, as the case may be; when it is found by such respective executive authority that, according to the law and the evidence, the extradition is due pursuant to the terms of this convention, the fugitive may be given up according to the forms of law prescribed in such cases.

"Article X. On being informed by telegraph or otherwise, through the diplomatic channel, that a warrant has been issued by competent authority for the arrest of a fugitive criminal charged with any of the crimes enumerated in the foregoing articles of this treaty, and on being assured from the same source that a requisition for the surrender of such criminal is about to be made accompanied by such warrant and duly authenticated depositions or copies thereof in support of the charge, each government shall endeavor to procure the provisional arrest of such criminal and to keep him in safe custody for such time as may be practicable, not exceeding forty days, to await the production of the documents upon which the claim for extradition is founded."

310

The true nature of the proceeding is stated in Benson v. McMahon, 127 U. S. 457, 8 S. Ct. 1240, 1243, 32 L. Ed. 236, as follows: "Taking this provision of the treaty, and that of the Revised Statutes above recited, we are of opinion that the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him. The language of the treaty, which we have cited above, explicitly provides that 'the commission of the crime shall be so established as that the laws of the country in which the fugitive or the person so accused shall be found would justify his or her apprehension and commitment for trial if the crime had been there committed.' This describes the proceedings in these preliminary examinations as accurately as language can well do it. The act of congress conferring jurisdiction upon the commissioner, or other examining officer, it may be noted in this connection, says that if he deems the evidence sufficient to sustain the charge under the provisions of the treaty he shall certify the same, together with a copy of all the testimony, and issue his warrant for the commitment of the person so charged."

■■ It has long been the rule that there is no appeal from such a magistrate's decision, whether he be a justice, judge, or commissioner. Re Metzger, 5 How. (46 U. S.) 176, 12 L. Ed. 104; Benson v. McMahon, supra; In re Luis Oteiza y Cortes v. Jacobus, 136 U. S. 330, 10 S. Ct. 1031, 34 L. Ed. 464; Collins v. Miller, 252 U. S. 366, 40 S. Ct. 347, 64 L. Ed. 617. And it is ordinarily not reviewable by habeas corpus, except for the purpose of inquiring into the jurisdiction of the magistrate, whether the offense charged is within the treaty and whether there is any evidence affording reasonable ground to believe the accused guilty. Collins v. Miller, supra; Bernstein v. Gross (C. C. A.) 58 F. (2d) 154.

The Supreme Court, in Colorado v. Symes, 286 U. S. 511, 52 S. Ct. 635, 637, 76 L. Ed. 1253, in referring to what is now section 76 of the Code, uses this language (italics

mine): "The various acts of Congress constituting the section as it now stands were enacted to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment *for violation of state law or obstruction or embarrassment by reason of opposing policy on the part of those exerting or controlling state power.* Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Maryland v. Soper (No. 1), 270 U. S. 9, 32, 46 S. Ct. 185, 70 L. Ed. 449; The Mayor v. Cooper, 6 Wall. 247, 253, 18 L. Ed. 851; Findley v. Satterfield, Fed. Cas. No. 4,792. It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted. See Venable v. Richards, 105 U. S. 636, 638, 26 L. Ed. 1196; State v. Sullivan (C. C.) 50 F. 593, 594. And it is axiomatic that the right of the states, consistently with the Constitution and laws of the United States, to make and enforce their own laws is equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it. The removal statute under consideration is to be construed with highest regard for such equality. Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law. Congress is not to be deemed to have intended that jurisdiction to try persons accused of violating the laws of a state should be wrested from its courts in the absence of a full disclosure of the facts constituting the grounds on which they claim protection under section 33."

See, also, Commonwealth of Virginia v. Paul, 148 U. S. 117, 13 S. Ct. 536, 37 L. Ed. 386.

My conclusion is that section 76 has no application to the proceeding before Judge Mullally, and that it is not removable into this court under such section.

■ 2. The question is presented also of whether the deputy clerk was empowered to issue such writ of habeas corpus cum causa. I think this must be answered in the negative. Section 76 empowers the clerk and his deputies to issue such process without the order of a judge only in cases where the court is not in session. This court is in session in all of the divisions all of the time, and was in session in the Laredo Division at the time the writ was issued.

■ 3. It is also suggested that in view of the fact that the Judge of this court and

Judge Mullally as magistrates have, under section 651, concurrent jurisdiction in this proceeding, the Judge of this court should retain jurisdiction and proceed to hearing. While I think it is clear that any Justice or Judge before whom a proceeding of this kind is pending would have the right to request another Justice or Judge (authorized to act under section 651) to hear it for him, the record does not present a case of that kind. The record shows that the proceeding is here because of an attempted removal in the manner indicated.

From what has been said, it follows that the case must be remanded to Judge Mullally sitting as a magistrate.

Let an order be drawn and presented accordingly.