## BRYANT *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 779. Argued April 26, 1897. — Decided May 10, 1897.

*Ornelas* v. *Ruiz*, 161 U. S. 502, followed, to the point that if, in extradition proceedings the committing magistrate had jurisdiction of the subject-matter and of the accused, and the offence charged is within the terms of the treaty of extradition, and the magistrate, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision cannot be reviewed on *habeas corpus*.

THIS was an appeal from a final order of the Circuit Court for the Southern District of New York, dismissing writs of *habeas corpus* and *certiorari* sued out by the appellant ·to obtain his release from the custody of the marshal of that district, and the· warden of the jail of the. city and county of New York.

The proceedings were originally instituted by a complaint made before a commissioner of the Circuit Court, duly authorized to act in cases of extradition, by Her Britannic Majesty's consul general at the city of New York, who charged the appellant with the crimes of forgery, larceny, embezzlement and false entries, committed in the city of London, and demanded his extradition under article X of the treaty of November 10,. 1842, and article I of the treaty supplemental thereto of March 25, 1890.

The commissioner held that the evidence clearly showed that the appellant had been guilty of a crime specifically mentioned in the treaty stipulations between the two countries, and accordingly held him to await the action of the Sec-

retary of State and the final warrant of delivery. Appellant thereupon sued out from the Circuit Court writs of *habeas corpus* and *certiorari;* but that court, holding that there was legal evidence upon which the commissioner could properly exercise his judgment as to the guilt or innocence of the accused, dismissed the writs and remanded the prisoner to the custody of the marshal for the Southern District of New York. From that order petitioner appealed to this court.

*Mr. Lorenzo Semple* for appellant. *Mr. T. D. Semple* was on the brief.

*Mr. Charles Fox* for appellee.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The question before the commissioner in this case was whether, in the language of the treaty of 1842, article X, 8 Stat. 572, 576, there was "such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offence had been there committed." In other words, whether, according to our laws, there was probable cause to believe him guilty of the crimes charged. Rev. Stat. § 5270; *Benson* v. *McMahon,* 127 U. S. 457, 462. The question before us is even narrower than that, viz.: Whether there was any *legal evidence* at all upon which the commissioner could decide that there was evidence *sufficient* to justify his commitment for extradition; or, as stated in *Ornelas* v. *Ruiz,* 161 U. S. 502, 508, "if the committing magistrate has jurisdiction of the subject-matter and of the accused, and the offence charged is within the terms of the treaty of extradition, and the magistrate in arriving at a decision to hold the accused has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision cannot be reviewed on *habeas corpus.*" See also *In re Oteiza,* 136 U. S. 330.

The evidence before the commissioner tended to show that Bryant was employed by the firm of Morrison & Marshall of London as bookkeeper and assistant cashier from January to October, 1896, at a salary of £104 per annum; that he had under his control the cheque books of the firm and the paid cheques returned from the bank, although he was not authorized to sign the firm's name to cheques; that the firm kept an account with the London office of the Commercial Bank of Scotland, and that such account was charged with the three following cheques, viz.: June 23, £500; August 14, £500; September 1, £720. These cheques purported to be drawn on the bank and to be signed by Morrison & Marshall, and were presented for payment by the Provincial Bank of England, and were paid and debited to Morrison & Marshall.

It further appeared that Bryant kept an account with the Provincial Bank, in which he deposited on June 22 a cheque for £500; on August 13, a cheque for £500; and on September 9, a cheque for £720, which were credited to his account. It appeared that the three cheques paid by the Commercial Bank were abstracted from two cheque books which were not in use at the time, and were accessible to Bryant. No entry was made upon the counterfoils, or, as they are called in this country, the "stubs," of the cheque books from which they were taken; nor was any memorandum of such cheques anywhere entered; nor were these cheques among those, received back from the bank in the ordinary way.

It further appeared that Morrison & Marshall had a sum exceeding £5000, carried to the credit of a "suspense account" in their ledgers, with which account, however, Bryant had no authority to interfere. He did, however, bring a credit of £2000 from such "suspense account" to a fictitious account, which he opened in the ledger in the name of T. H. North. Against this credit of £2000 he debited two items of £780 and £1220. The £780 was posted in the ledger from the cash book, and consisted of £280 and the £500 represented by the first cheque paid June 23. The £1220 was represented by the cheques paid August 14, £500, and September 10, £720. These amounts Bryant did not carry

out in the cash column of the cash book, but in order that the balances of the cash book, ledger and banker's pass book should agree, he added the sum of £1220 to the total at the bottom of the page, notwithstanding that amount was not in the column, nor was there any entry in the cash book relating to the £1220, which could be posted to North's fictitious account.

Upon this evidence the appellant contended, first, that there was no testimony before the commissioner tending to show that he had been guilty of forging the three cheques; second, that if it were shown that he had made false entries upon the books of Morrison & Marshall, this would not constitute an offence for which he could be extradited, for the reason that when the treaty of 1842 was executed, the making of false entries was not forgery; third, that as to the additional sum of £280, which the relator was charged with embezzling, there was no evidence of criminality; fourth, that if there were evidence sufficient to hold appellant upon the charge of forgery of the three cheques, he could not be held as for larceny or embezzlement, and that if he were held for embezzlement from Morrison & Marshall he could not be also held for obtaining the same money from the bank upon the forged cheques; fifth, that, as he could only be tried for the particular offence for which he is surrendered, the demanding government and the commissioner should have elected, and if the latter deemed the evidence sufficient to commit upon the one charge, he should not have been committed upon the other.

We think there was legal evidence against the prisoner upon which the commissioner was authorized to act, and that is sufficient for the purposes of this case. If it were true that three cheques were missing from the cheque books of Morrison & Marshall to which the prisoner had access, and no corresponding memoranda were made on the stubs; that three cheques were presented to the Commercial Bank by a bank at which the appellant kept a personal account, and this account showed a credit of three cheques, which upon the following day were presented and paid by the

Commercial Bank, and that the appellant had no authority to sign cheques for Morrison & Marshall, the inference is at least a reasonable one that these cheques were forged by the appellant. The commissioner was of opinion that, if the moneys of the firm were not actually obtained by forgery, they were obtained by embezzlement or larceny, or, at least, there was probable cause to believe that they were so obtained. So long as the prisoner is tried upon the facts which appeared in evidence before the commissioner, and upon the charges or one of the charges for which he is surrendered, it is immaterial whether the indictment against him shall contain counts for forgery, larceny or embezzlement. That is a matter of practice with which we have nothing to do. While the original treaty of 1842 authorized the surrender only for the crime of forgery, or the utterance of forged paper, the supplemental treaty of March 25, 1890, 26 Stat. 1508, included both embezzlement and larceny.

The order of the Circuit Court is

*Affirmed.*