## UNITED STATES v. GREENE et al.

### (District Court, S. D. New York. May 15, 1901.)

**1.** CRIMINAL LAW—REMOVAL OF DEFENDANT TO ANOTHER DISTRICT—DEFENSE TO APPLICATION.

     A federal court will not, on an application for an order removing to another district for trial persons there indicted, hold the indictment void for irregularity in drawing the grand jury, where the question involved is a new one of statutory construction, which has never been adjudicated, but will leave the accused to raise the question in the trial, where the decision can be reviewed in the regular course of appeal.

It is only where there can be no reasonable doubt of the alleged invalidity that removal should be refused on such ground.

2. SAME—FINDINGS OF COMMISSIONER—REVIEW.

Where the commissioner on the hearing in proceedings for the removal of persons charged with crime to another district for trial had before him any competent legal evidence upon which to exercise his judgment as to whether there was probable cause to believe the accused guilty, his finding upon that question cannot be reviewed by the court on an application for an order of removal.

3. SAME—EVIDENCE BEFORE COMMISSIONER.

The evidence receivable on a hearing before a commissioner in proceedings for the removal to another district of persons charged with the commission of a crime therein is not to be strictly limited by the technical rules applicable on a final trial. Where fraud is charged, or a conspiracy to defraud, a somewhat wide latitude must necessarily be given in the introduction of circumstantial evidence.

On Application for an Order for the Removal of Defendants to Another District for Trial.

Marion Erwin, Ass't U. S. Atty.
Kellogg & Rose, for respondents.

BROWN, District Judge. Since this matter was previously before me (100 Fed. 941) a large amount of testimony pro and con has been taken by the commissioner on the question as to probable cause of the commission of the offense charged, as well as proof also concerning alleged irregularities, which it is contended vitiated the indictment upon which the removal of the defendants is sought.

1. The facts as respect the latter objections are briefly as follows:

The offenses charged being in the Eastern division of the Southern district of Georgia, the grand jury was necessarily impaneled and the indictment found in that division. The drawing of the names of jurors for the venire was done at Macon in the Western division. Prior to the drawing of the names the judge of the district, pursuant to section 802 of the United States Revised Statutes, for the purpose of securing a jury "the most favorable to an impartial trial and so as not to incur any unnecessary expense," directed "that the jurors be returned from the counties of said Eastern division other than the counties of Chatham and Glyn," so that the jurors from Chatham and Glyn counties, in which Savannah and Brunswick are situated were excluded from consideration although their names were not removed from the box before drawing.

Names were then drawn from the box, and as they were drawn, all such names as were from those two counties were laid aside, and the venire was made up from the others drawn. Afterwards the latter jurors, as thus drawn, were summoned to appear at Savannah within the Eastern division and from them the grand jury was selected and sworn.

The whole number in the jury box for the Eastern division when last revised in 1897 was 562, of which 305 were from Chatham and Glyn counties. From these 197 had been drawn out for several prior juries. But even supposing that the names of all those who were previously drawn out had been put back, the whole number of jurors in the box, excluding those from Chatham and Glyn counties, would be

108 F.—52

but 257. Section 2 of chapter 52 of the act of June 30, 1879 (Supp. Rev. St. p. 270), requires, however, "that all such jurors * * * shall be publicly drawn from a box containing at the time of this drawing the names of not less than three hundred persons possessing the qualifications prescribed in section 800 of the Revised Statutes," etc.

It is contended for the defendants that by the order of the judge excluding all jurors from Chatham and Glyn counties, there remained in the box at the time of this venire at most but 257 competent jurors, instead of 300, as required by the above act; because by force of the judge's order the jurors became incompetent for this venire; and that the legal force and effect of the order were the same as if the names of the Chatham and Glyn county jurors had been actually withdrawn from the box before the drawing commenced.

I have no doubt that the requirements of the act of 1879 are mandatory, and that any substantial departure from its provisions will invalidate the subsequent proceedings if due objection is seasonably raised. But even if the judge's order was equivalent to a withdrawal from the jury box of the names of the jurors from Chatham and Glyn counties, as the defendants contend (which is itself a question), so that in legal effect only 257 names remained in the box when the jury was drawn, there are still two sufficient reasons why this objection should not prevent a removal of the accused for trial, if a case for removal is otherwise made out: (a) because the question is a new one arising upon the construction and effect of an important statute, and not decided or in any way passed upon by the supreme court as the ultimate authority. Any decision in defendants' favor in this proceeding could not be reviewed or corrected if erroneous in the ordinary mode of review, and justice would by such an erroneous ruling be defeated; whereas by leaving the question for the trial court, this objection will continue to be equally available to the defendants there, and any decision thereon adverse to the defendants, if erroneous, can be corrected in the regular course of appeal. It is only where there can be no reasonable doubt concerning the invalidity alleged that removal should on such grounds be refused.

(b) Under the ruling of the supreme court in the case of Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624, there is at least some question whether the objection to the grand jury has not been waived. The general rule is that such objections should be taken at the first opportunity, and unless so taken are waived. I had supposed, indeed, that the time when the accused was arraigned and called on to plead, was regarded as the first opportunity and in time; but in the above case the accused was held to have waived the objections because being within the district he had not before arraignment come into court and moved to set aside the proceedings. This question like the last must be referred to the trial court.

Of the same nature is the further objection that the grand jury were drawn in the Western division of the district instead of the Eastern division as is incorrectly stated on the face of the indictment. So far as I know, it has never been adjudged, nor is it clear to me that the drawing as proved is such an irregularity, if it be an irreg-

ularity, as to make void the subsequent proceedings, under the act of January 29, 1880 (1 Supp. Rev. St. p. 277), dividing the Southern district of Georgia into the Eastern and Western divisions. That act has no specific directions on this point; and the place of drawing, if within the district, seems immaterial, and this objection as well as that relating to the mode of putting the names into the box, should be referred to the trial court.

2. Probable Cause. Upon a large amount of testimony taken under the order referring the matter back to the commissioner, he has committed the defendants for trial by order of March 21, 1901, in which he states that:

"After full and fair examination touching the charge in the annexed warrant named, it appears from the testimony offered that there is probable cause to believe the defendants guilty of the charges therein contained."

Upon the question of the existence of probable cause to believe that an offense has been committed, the rule as respects any review of the commissioner's finding, is the same whether the question arises upon an application for removal to another district under section 1014, Rev. St., or upon habeas corpus and certiorari or an appeal therefrom in cases of international extradition. In all such cases the question upon review never is whether the proof was such as would be required to convict the accused upon a trial by jury; but only as to the existence of any legal evidence before the commissioner upon which he might find that there was reasonable cause to believe that the crime has been committed. In the case of Bryant v. U. S., 167 U. S. 104, 17 Sup. Ct. 744, 42 L. Ed. 94, the question in the opinion of Mr. Justice Brown is stated to be,

"Whether there was any legal evidence at all upon which the commissioner could decide that there was evidence sufficient to justify his commitment for extradition; or, as stated in Ornelas v. Ruiz, 161 U. S. 502, 508, 16 Sup. Ct. 691, 40 L. Ed. 789, 'If the committing magistrate has jurisdiction of the subject-matter and of the accused, and the offense charged is within the terms of the treaty of extradition, and the magistrate in arriving at a decision to hold the accused has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision cannot be reviewed on habeas corpus.'"

In the prior case of Oteiza v. Jacobus, 136 U. S. 330, 334, 10 Sup. Ct. 1032, 34 L. Ed. 466, the supreme court by Mr. Justice Blatchford says:

"If the commissioner has jurisdiction of the subject-matter, * * * and the commissioner, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused, for the purposes of extradition, such decision of the commissioner cannot be reviewed by a circuit court or by this court, on habeas corpus, either originally or by appeal."

The commitment by the commissioner and his finding of probable cause have been made after an extremely full hearing of all the evidence offered on both sides. No evidence reasonably pertinent has been rejected. Objection is made that irrelevant and incompetent evidence offered by the government was received by him; but as stated in the former decision, the evidence receivable in such preliminary

examinations is not to be strictly limited by the technical rules applicable upon the final trial; and upon a charge of fraud, or of conspiracy to defraud, a somewhat wide latitude in the testimony is always allowed even on the final hearing, for the purpose of showing the intent. The proof of the charges in this case does not consist of any direct and certain testimony of the commission of the offenses charged, but rests upon many facts and circumstances in a long course of dealing, from which it is claimed that the inference of an unlawful intent to defraud the government must reasonably be inferred; and the bills alleged to be fraudulent in the last counts of the indictment, are claimed to be fraudulent, not so much because they were not according to contract, as because the contracts themselves were fraudulent, and procured through a fraudulent conspiracy with Capt. Carter, an employé of the government. Considering the nature of the case, therefore, I find no such objections to the testimony admitted by the commissioner as to vitiate his findings or require reconsideration by him.

As respects the finding of probable cause, I have carefully considered the very extended briefs and arguments of counsel, and have examined the voluminous evidence with a view to ascertain whether there was competent evidence before the commissioner sufficient in itself to sustain his finding of probable cause. Under the rule above stated, it is not for the judge on an application for removal to compare different parts of the testimony in order to determine their relative weight, or to substitute his own judgment for that of the commissioner, even though it might on the whole evidence be different. By this, however, I do not mean to be understood as expressing any opinion whatsoever on the merits of the case. The defendants have given a great deal of evidence tending to show that their contracts were fairly obtained, their work well and honestly done, and that the government has not been defrauded of a dollar.

The government on the other hand has given evidence tending to a contrary conclusion; and it has shown beyond question that Capt. Carter, the employé of the government and the engineer in immediate charge of the work on the government's behalf, had for several years immediately preceding the contracts referred to in the indictment received from the contractors continuously, through his father-in-law, in many divisions of profits, one-third of the final net proceeds of each contract remaining for division among the chief contractors; and that this one-third amounted in the aggregate to over $700,000. This, it is claimed gives significance and meaning to many other facts evidence showing a fraudulent and illegal combination between the defendants and Capt. Carter to benefit themselves at the expense of the government, and to procure the allowance and payment of excessive and fraudulent bills by means of contracts fraudulently procured.

A case presenting such circumstances is especially one that should be submitted to a jury trial. Nor need there be any apprehension that an impartial court and jury will not reach essential justice, or that while guarding jealously the honor and interests of the government, they will not also appreciate the legitimate rights of the defendants, the peculiar difficulties, risks and hazards of such contract

work, the excellence and merit of that which is well done, and the rights of the defendants by legitimate business methods to lessen competition and to secure as favorable contracts as they can; and determine fairly whether the contracts in question were fraudulent, or obtained by illegal methods, or by a conspiracy with the engineer in charge to abuse the opportunities of his position in order to despoil the government and obtain exorbitant prices for their common benefit.

Having found in the previous decision that the ninth and tenth counts of the indictment are good, whatever may be held as to the counts preceding them, the defendants should be ordered to be removed for trial or to give bail for their due appearance.