## COCHRAN et al. v. ESOLA, Marshal. *
### No. 6975.

Circuit Court of Appeals, Ninth Circuit.

Sept. 15, 1933.

Marshall B. Woodworth and Frank B. Lorigan, both of San Francisco, Cal., for appellants.

I. M. Peckham, U. S. Atty., and Leo C. Dunnell, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

An indictment was found in the United States District Court for the Eastern District of Washington, Northern Division, against Robt. T. Cochran & Co., a Nevada corpora-

*For opinion denying rehearing, see 67 F.(2d) 743.

tion, and three of its officers, including the appellants.

The defendants were charged with violating the Produce Agency Act, § 1 (7 USCA § 491), the material provisions of which are as follows: " * * * any person, firm, association, or corporation receiving any fruits * * * in interstate commerce * * * for or on behalf of another, * * * who shall knowingly and with intent to defraud fail truly and correctly to account therefor shall be guilty of a misdemeanor and upon conviction shall be punished by a fine," etc.

In a removal proceeding before the United States commissioner for the Northern District of California, the appellants were ordered removed from that district to the aforesaid district in the state of Washington. The order of the United States commissioner was supplemented by an order of the court below. The appellants filed a petition for a writ of habeas corpus, which was denied, and the appellants were ordered removed to the district in the state of Washington, as aforesaid. From those orders the present appeal was taken.

In their brief, the appellants state that their assignments of error raise five principal questions, as follows:

"1. The indictment is fatally defective in not stating any offense.

"2. The indictment fails to set out any venue.

"3. Allegations of indictment [are] inconsistent with any idea that venue of offenses attempted to be charged could have been in the State and Federal District of Washington.

"4. No probable cause to hold appellants for removal. Bankruptcy proceedings [are] a complete defense to removal.

"5. Error to hold that involuntary bankruptcy, conceded to be a complete defense on the trial of the case, could only be presented on the trial and not in removal proceedings."

It will be observed that points 2 and 3 in reality deal with the same question, and will be so treated herein.

The indictment contains nine counts, relating to apples of various growers. The material allegations of count 1, which is typical of the other eight, are as follows:

"(1) * * * [the defendants] having been engaged in the business of receiving on consignment, handling and selling on a commission basis as agents of persons and concerns from whom so received, apples and other perishable farm products; that said business and products are and at all times herein mentioned have been part of a stream of interstate commerce in said products, wherein said products were and continuously during all times herein mentioned have been received from purchasers, growers, and other consignors thereof within the State of Washington, loaded into railroad cars and in said cars shipped at consignors' expense to points outside of the State of Washington, and there sold to sundry purchasers on behalf of the said consignors.

"(2) * * * [the defendants] did in the course of business and in interstate commerce as hereinbefore described, receive from B. F. Perry, at Omak, in the County of Okanogan, in the Northern Division of the Eastern District of Washington, and within the jurisdiction of this Court, to be packed, shipped and sold for and on behalf of the said B. F. Perry, in said business and commerce, a quantity of apples in bulk, which after being packed in defendants' packing house amounted to 5525 packed boxes of apples, a perishable farm product, hereinafter called produce, and loaded the same into various and sundry railroad cars * * *; that the apples so packed and loaded were shipped in railroad cars in interstate commerce as aforesaid to various markets beyond the boundaries of the State of Washington, and were then and there sold by defendants for and on behalf of said B. F. Perry to one or more purchasers unknown.

"(3) That the said defendants in violation of the Act of Congress of March 3, 1927 (44 Stat. 1355) did knowingly and with intent to defraud fail truly and correctly to account to the said B. F. Perry for the said produce, in this, that the said defendants disposed of and sold the produce aforesaid for prices which, after all legitimate expenses and proper charges had been deducted from the selling prices thereof, left net proceeds due and owing to the said B. F. Perry by the above named defendants amounting to the sum of $4032.64, more or less, which sum the said defendants failed to remit and continue so to fail to remit to the said B. F. Perry."

■ The appellants lay chief stress upon the asserted defects in the indictment. We will not inquire into these alleged deficiencies of the indictment, since, under an unbroken line of decisions by the Supreme Court of the United States, the validity of the indictment is immaterial in removal proceedings, under R. S. § 1014, as amended (18 USCA § 591).

Perhaps the leading case on the subject is Greene v. Henkel, 183 U. S. 249, 260, 261, 22

S. Ct. 218, 223, 46 L. Ed. 177, in which the court used the following language:

"It is not a condition precedent to taking action under § 1014 of the Revised Statutes that an indictment for the offense should have been found. Price v. McCarty, 32 C. C. A. 162, 89 F. 84, Circuit Court of Appeals, Second Circuit, June, 1898. * * *

"The finding of an indictment does not preclude the government under § 1014 from giving evidence of a certain and definite character concerning the commission of the offense by the defendants in regard to acts, times, and circumstances which are stated in the indictment itself with less minuteness and detail, and the mere fact that in the indictment there may be lacking some technical averment of time or place or circumstance in order to render the indictment free from even technical defects, will not prevent the removal under that section, if evidence be given upon the hearing which supplies such defects and shows probable cause to believe the defendants guilty of the commission of the offense defectively stated in the indictment. It follows, also, that a decision granting a removal under the section named, where an indictment has been found, is not to be regarded as adjudging the sufficiency of the indictment in law as against any objection thereto which may subsequently be made by the defendants. That is matter for the tribunal authorized to deal with the subject in the other district. We do not, however, hold that when an indictment charges no offense against the laws of the United States, *and the evidence given fails to show any*, or if it appear that the offense charged was not committed or triable in the district to which the removal is sought, that the court would be justified in ordering the removal, and thus subjecting the defendant to the necessity of making such a defense in the court where the indictment was found. In that case there would be no jurisdiction to commit nor any to order the removal of the prisoner.

"Upon this writ the point to be decided is, whether the judge who made the order for the removal of the defendants had jurisdiction to make it, and if he had, the question whether, upon the merits, he ought to have made it is not one which can be reviewed by means of the writ of habeas corpus.

"Jurisdiction upon that writ in such a proceeding as this does not extend to an examination of the evidence upon the merits. The matter for adjudication is similar to that which obtains in cases of international extradition. In such case, if there is competent legal evidence on which the commissioner might base his decision, it is enough, and the decision cannot be reviewed in this way. Bryant v. United States, 167 U. S. 104, 17 S. Ct. 744, 42 L. Ed. 94. There must be some competent evidence to show that an offense has been committed over which the court in the other district had jurisdiction, and that the defendant is the individual named in the charge, and that there is probable cause for believing him guilty of the offense charged." (Italics our own.)

The foregoing principles have been repeatedly reaffirmed by the Supreme Court, down to the present day. For example, in Morse v. United States, 267 U. S. 80, 83, 84, 45 S. Ct. 209, 210, 69 L. Ed. 522, Mr. Justice Sutherland said, with reference to the contention that the indictment was "fatally defective":

"The second contention proceeds upon a complete misconception of the purpose for which the indictment is produced and considered in removal proceedings, and the authoritative effect of the ruling of the commissioner and the court on habeas corpus in respect thereof. The inquiry in such proceedings is whether there is probable cause to believe the prisoner guilty and justify his removal for trial. That inquiry may be made and the prisoner removed to the trial district in advance of indictment or without the production of the indictment if one has been found. Greene v. Henkel, 183 U. S. 249, 260, 22 S. Ct. 218, 46 L. Ed. 177; Pierce v. Creecy, 210 U. S. 387, 403, 28 S. Ct. 714, 52 L. Ed. 1113; United States v. Greene (D. C.) 100 F. 941, 943. The indictment was before the commissioner simply as evidence for the purpose of establishing or tending to establish the commission of an offense; and the commissioner had authority to pass upon its effect in that aspect only. The court reviewing the action of the commissioner under section 1014 upon habeas corpus was governed by the same rules and its decision was subject to the same limitation. Henry v. Henkel, 235 U. S. 219, 230, 35 S. Ct. 54, 59 L. Ed. 203; Benson v. Palmer, 31 App. D. C. 561, 564, 565, 17 L. R. A. (N. S.) 1247. *Neither had authority to determine the sufficiency of the indictment as a pleading.* 'The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the State from which he has fled.' Pierce v. Creecy, supra, pages 401, 402 [of 210 U. S.], 28 S. Ct. 714, 718. In Benson v.

Henkel, 198 U. S. 1, 12, 25 S. Ct. 569, 571, 49 L. Ed. 919, this court said:

" 'While we have no desire to minimize what we have already said with regard to the indictment setting out the substance of the offense in language sufficient to apprise the accused of the nature of the charge against him, still it must be borne in mind that the indictment is merely offered as proof of the charge originally contained in the complaint, and not as a complaint in itself or foundation of the charge, which may be supported by oral testimony as well as by the indictment. When the accused is arraigned in the trial court he may take advantage of every insufficiency in the indictment, since it is there the very foundation of the charge, but to hold it to be the duty of the commissioner to determine the validity of every indictment as a pleading, when offered only as evidence, is to put in his hands a dangerous power, which might be subject to serious abuse. If, for instance, he were moved by personal considerations, popular clamor or insufficient knowledge of the law to discharge the accused by reason of the insufficiency of the indictment, it might turn out that the indictment was perfectly valid and that the accused should have been held. But the evil once done is, or may be, irremediable, and the commissioner, in setting himself up as a court of last resort to determine the validity of the indictment, is liable to do a gross injustice.' "

It may be observed in passing that the foregoing Supreme Court case was not cited by counsel.

In even more recent decisions, the Supreme Court has re-enunciated the principles laid down in Morse v. United States, supra. Unequivocal language is to be found in Fetters v. United States, 283 U. S. 638, 641, 51 S. Ct. 596, 597, 75 L. Ed. 1321: "In proceedings under section 1014, R. S., the inquiry is limited to the question whether there is probable cause to believe the prisoner guilty, so as to justify his commitment and removal for trial. This inquiry may take place in advance of indictment or without the production of the indictment if one has been returned. When the indictment is produced before the committing magistrate, it is received not as a pleading, but as evidence establishing or tending to establish the commission of an offense; and the magistrate has authority to pass upon it only in that aspect. He has no authority to determine its sufficiency as a pleading. Morse v. United States, 267 U. S. 80, 83, 45 S. Ct. 209, 69 L. Ed. 522, and cases cited."

Finally, in Ex parte United States, 287 U. S. 241, 250, 53 S. Ct. 129, 131, 77 L. Ed. 283, decided December 5, 1932, we find the following statement: "In cases arising under the removal statute, the indictment is produced and considered, not as a basic pleading, but merely as evidence establishing or tending to establish the commission of the offense and which may or may not settle the question of probable cause. In the trial court to which the indictment has been returned it is 'the very foundation of the charge.' [Cases cited.]"

See, also, Beavers v. Henkel, 194 U. S. 73, 87, 24 S. Ct. 605, 48 L. Ed. 882; Benson v. Henkel, 198 U. S. 1, 10, 11, 25 S. Ct. 569, 49 L. Ed. 919; Tinsley v. Treat, 205 U. S. 20, 30, 31, 27 S. Ct. 430, 51 L. Ed. 689; Henry v. Henkel, 235 U. S. 219, 228, 229, 35 S. Ct. 54, 59 L. Ed. 203; Rodman v. Pothier, 264 U. S. 399, 402, 403, 44 S. Ct. 360, 68 L. Ed. 759; United States ex rel. Hughes v. Gault, 271 U. S. 142, 150, 151, 46 S. Ct. 459, 70 L. Ed. 875.

In view of the foregoing positive declarations of the Supreme Court of the United States, we hold that we are not here concerned with the validity of the indictment as a pleading, and that whatever defects it might contain as an instrument of proof could be and were corrected by the oral and documentary evidence adduced before the commissioner, which evidence forms part of the record before us here.

The evidence before this court, including the indictment itself, clearly establishes, we think, probable cause to believe that the appellants have committed, in the language of Greene v. Henkel, supra, "an offense against the laws of the United States."

In the first place, the evidence shows that the apples were received in interstate commerce, as required by the statute in order that a federal offense should be made out. On direct examination, the appellant Cochran was asked the following question and gave the following answer, regarding the pooling agreements:

"Q. What was the course of business and practice in your business with reference to the acquisition or receipt, of these apples in Washington? Did you receive these apples in Washington through some commissioner? A. Yes, we had a packing house in Riverside and one at Cashmere, and we would receive these apples in bulk, which we would pack and ship out and sell them to different markets in the United States."

The above testimony, coupled with the allegations in the indictment relative to "a stream of interstate commerce" and the receipt of the apples by the defendants "in the course of business and in interstate commerce," establishes with sufficient definiteness that the apples were by the appellants "received in interstate commerce."

That some of the apples *might* have been sold in the state of Washington does not detract from the interstate character of the shipments from the time they left the growers, provided "the course of business" establishes that the shipments were interstate in character. In Lemke v. Farmers' Grain Co., 258 U. S. 50, 55, 42 S. Ct. 244, 246, 66 L. Ed. 458, the court said: "It is true, as appellants contend, that after the wheat was delivered at complainant's elevator, or loaded on the cars for shipment, it might have been diverted to a local market or sent to a local mill. But such was not the course of business. The testimony shows that practically all the wheat purchased by the complainant was for shipment to and sale in the Minneapolis market. That was the course of business, and fixed and determined the interstate character of the transactions. [Cases cited.]"

The apples were in interstate commerce at the time they were received by the appellants, both according to the allegations of the indictment and according to the legal effect of the testimony of the appellant Cochran.

But, insist the appellants, the indictment sets out no venue, and venue is jurisdictional.

As we have seen, however, the indictment is to be regarded merely as a piece of evidence, so that if the venue is shown elsewhere by other proof, the removal must not be denied.

In the instant case, the testimony, the exhibits, and the briefs are unanimous that all the growers to whom an accounting should have been rendered, resided in the state of Washington.

It is fundamental law that the agent is required to account to his principal at the latter's place of business. It is inconceivable that the Washington growers would have to go to the "points of sale," outside of the state of Washington, in order to prosecute the appellants. It was the appellant's duty to account to their principals at the latter's places of residence, in Washington.

Nor are we impressed with the appellants' argument that the indictment is defective in that it charges only a "failure to remit," whereas the statute punishes a "failure to account." We repeat that we are here considering the indictment not as a pleading but merely as a piece of evidence, and that therefore we are not concerned with its inartificialities of language, if such exist. As we shall see, there is ample documentary evidence outside of the indictment to establish probable cause to believe that the appellants, in the language of the statute, "knowingly and with intent to defraud failed truly and correctly to account" to their principals for the net proceeds of the sales.

We advance next to one of the principal contentions of the appellants, namely, that no probable cause to remove them was established.

Without entering into a detailed analysis of the evidence, we will confine our attention to two or three exhibits that amply support the existence of probable cause to believe that the appellants "knowingly and with intent to defraud failed truly and correctly to account" to their principals for the net proceeds of the apple sales.

We advert first to a letter dated March 5, 1930, from the appellant Broome to the appellant Cochran. The concluding paragraph of the letter is illuminating: "I haven't got my money yet from Cassells and am consequently having to stall Sorensen [one of the growers] and I want to tell you it is not pleasant matter trying to do it. I told Sorensen that only one car of his had been sold so far and he seems to have fallen for it. I only hope he doesn't run into Kemp and Kemp will spill the beans."

That the appellant Cochran approved of such methods of "accounting" is suggested by his letter to Broome, dated March 8, 1930, in which appears the following paragraph: "You are certainly doing mighty good old boy to stall Sorensen and the rest of them and I just hope you can stall them long enough until we can work out this plan New York is giving us and wants us to follow. I appreciate your position and I know you are certainly fighting for R. T. C. Co. That's all right, old fellow, clean it up and when you get home we will start out on a new path and make some dough when we get rid of some of these worthless men we have had with us."

In their brief, the appellants quote part of a paragraph from a letter written by the appellant Broome to Cochran on March 28, 1930. The appellants, however, have overlooked the closing sentence of the same para-

graph, which reads as follows: "I don't know just how we stand with Sorensen as we got these apples strictly on a consignment basis and we have apparently used his funds from the sale of the apples for other purposes and whether Sorensen can press any claim against us with the Dept. of Agriculture or through other channels for using his money I cannot say, but I do know that if the above deal could be arranged it would save a lot of trouble which I am afraid this bird is going to cause us."

The three foregoing letters alone establish at least "probable cause" to believe that these appellants were guilty of conscious violation of the Produce Agency Act.

■ We come, finally, to the appellants' contention that "the involuntary bankruptcy proceedings instituted against the defendant corporation, Robt. T. Cochran & Company, and the appointment of the receiver would not only be a valid and complete defense at the trial, but it was an equally legal and meritorious defense in the removal proceedings." The appellants further argue that "by virtue of the bankruptcy proceedings, it was physically and legally impossible for them to commit the offenses charged against them; they could not remit as all of the property of the bankrupt corporation was, and still is, in the hands of the receiver and the succeeding bankruptcy trustees."

Two short answers may be made to this contention. In the first place, it appears from the appellants' brief that the involuntary bankruptcy proceedings were instituted on March 25, 1930, and it is claimed that the pooling agreements with the growers was not closed until May, 1930. It will be observed, however, that the first two letters quoted above were written prior to the date on which bankruptcy proceedings were instituted, and the third letter clearly shows that Broome realized there was a present duty on the appellants' part to account to Sorensen. Furthermore, the record shows that Sorensen was not a member of the pool, and that consequently there could have been no neces-

sity of waiting until May, 1930, before accounting to him.

■ In the second place, it is well settled that, in removal or extradition proceedings, defensive matters are to be passed upon not by the committing magistrate or by the court whose order of removal is asked, but are to be reserved for determination in the trial court.

In United States ex rel. Hughes v. Gault, supra, at page 150 of 271 U. S., 46 S. Ct. 459, 460, Mr. Justice Holmes said: "Obviously, in order to make it the duty of the judge to issue the warrant [of removal] a mayor or a magistrate not a lawyer cannot be expected to do more than to decide in a summary way that the indictment is intended to charge an offense against the laws of the United States, that the person before him is the person charged and that there is probable cause to believe him guilty, without the magistrate's being held to more than avoiding palpable injustice. He is not intended to hold a preliminary trial, and, if probable cause is shown on the government side, he is not to set it aside because on the other evidence he believes the defendant innocent. The rule that would apply to a mayor applies to a commissioner of the United States."

See, also, Price v. Henkel, 216 U. S. 488, 492, 493, 30 S. Ct. 257, 54 L. Ed. 581; Harlan v. McGourin, 218 U. S. 442, 446, 447, 31 S. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849; Charlton v. Kelly, 229 U. S. 447, 462, 33 S. Ct. 945, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397; Henry v. Henkel, 235 U. S. 219, 228, 229, 35 S. Ct. 54, 59 L. Ed. 203; Rodman v. Pothier, supra, 264 U. S. at pages 402, 403, 44 S. Ct. 360, 68 L. Ed. 759; Collins v. Loisel, 259 U. S. 309, 316, 317, 42 S. Ct. 469, 66 L. Ed. 956; Fetters v. United States, supra, 283 U. S. at pages 641, 642, 51 S. Ct. 596, 75 L. Ed. 1321.

For the foregoing reasons, we are of the opinion that the orders denying the petition for a writ of habeas corpus and commanding the removal of the appellants, should be affirmed.

Orders affirmed.